IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WALL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-844 (GMS) |
| | ) | |
| BONDDESK GROUP, L.L.C., and | ) | |
| BONDDESK TRADING, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION
FOR A STAY PENDING *INTER PARTES* REEXAMINATION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com
*Attorneys for BondDesk Group, L.L.C.
and BondDesk Trading, L.L.C.*

OF COUNSEL:

Michael A. Jacobs
Rita F. Lin
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000

June 30, 2008
2248806

<u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT ...........................................................................................................................1

     I.     WALL CANNOT POINT TO ANY SPECIFIC UNDUE
           PREJUDICE. ........................................................................................................1

           A.     A Generic Claim that Reexamination Takes Years Does
                  Not Demonstrate Undue Prejudice. ...............................................................1

           B.     Wall Can Identify No Specific Undue Prejudice or Clear
                  Tactical Disadvantage that It Will Suffer. ....................................................4

           C.     In Any Event, Wall Overstates the Length of Time
                  Affected by the Stay.....................................................................................5

     II.    THE *INTER PARTES* REEXAMINATION OF THE SOLE
           PATENT-IN-SUIT WILL NECESSARILY SIMPLIFY THE
           ISSUES. ...............................................................................................................6

     III.   WALL CANNOT DISPUTE THAT THIS CASE IS IN ITS
           INFANCY................................................................................................................8

     IV.   BONDDESK'S MOTION FOR A STAY IS NOT PREMATURE. .......................9

CONCLUSION....................................................................................................................10

TABLE OF AUTHORITIES

Page(s)

CASES

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
    No. 06CV0253, 2008 U.S. Dist. LEXIS 19241 (N.D. Ohio Mar. 12, 2008)............................2

*Alltech, Inc. v. Agra-Partners, Ltd.*,
    No. 3:06-CV-337-R, 2007 U.S. Dist. LEXIS 78977 (W.D. Ky. Oct. 23, 2007) ......................4

*Anascape, Ltd. v. Microsoft Corp.*,
    475 F. Supp. 2d 612 (E.D. Tex. 2007).....................................................................................3

*Applied Materials, Inc. v. Negevtech, Inc.*,
    No. C 04-03656 SI, 2005 WL 1656894 (N.D. Cal. July 14, 2005) ........................................10

*Bausch & Lomb, Inc. v. Alcon Labs., Inc.*,
    914 F. Supp. 951, 38 U.S.Q.P.2d 1377 (W.D.N.Y.1996)...................................................... 3-4

*Bausch & Lomb, Inc. v. Rexall Sundown, Inc.*,
    No. 03-CV-6620T, 2008 U.S. Dist. LEXIS 40385 (W.D.N.Y. May 19, 2008) ......................2

*Cima Labs, Inc. v. Actavis Group HF*,
    Nos. 07-893 (DRD), 06-1970 (DRD), 2007 U.S. Dist. LEXIS 41516, at *25 (D.N.J.
    June 7, 2007)..............................................................................................................................3

*Cognex Corp. v. Nat'l Instruments Corp.*,
    No. 00-442-JJF, 2001 WL 34368283 (D. Del. June 29, 2001)..................................................4

*Cooper Techs. Co. v. Thomas & Betts Corp.*,
    No. 2:06-CV-242, 2008 WL 906315 (E.D. Tex. Mar. 31, 2008) ..............................................3

*EchoStar Techs. Corp. v. TiVo, Inc.*,
    No. 5:05-CV-81 (DF), 2006 U.S. Dist. LEXIS 48431 (E.D. Tex. July 14, 2006)....................7

*Equipements de Transformation IMAC v. Anheuser-Busch Cos.*,
    No. 07-13306, 2008 U.S. Dist. LEXIS 47163 (E.D. Mich. June 17, 2008) .............................2

*eSoft, Inc. v. Blue Coat Sys., Inc.*,
    505 F. Supp. 2d 784 (D. Colo. 2007)................................................................................... 2-3

*Genoa Color Techs., Ltd. v. Samsung Elecs. Am., Inc.*,
    No. 07 Civ. 6233 (PKC), 2008 WL 754681 (S.D.N.Y. Mar. 12, 2008 ....................................3

*Gold v. Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir.1983)......................................................................................................4

*Ho Keung Tse v. Apple, Inc.*,
    No. C 06-06573 SBA, 2007 U.S. Dist. LEXIS 76521 (N.D. Cal. Oct. 4, 2007) .................. 4-5

*In re Trans Tex. Holdings Corp.*,
    498 F.3d 1290 (Fed. Cir. 2007)...........................................................................................3

*Middleton, Inc. v. Minn. Mining & Mfg. Co.*,
    No. 4:03-cv-40493, 2004 U.S. Dist. LEXIS 16812 (S.D. Iowa Aug. 24, 2004) .....................3

*Network Appliance, Inc. v. Sun Microsystems, Inc.*,
    No. C-07-06053 EDL, 2008 WL 2168917 (N.D. Cal. May 23, 2008) .....................................3

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
    No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003)..........................4, 9

*Photoflex Prods., Inc. v. Circa 3 LLC*,
    No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743 (N.D. Cal. May 24, 2006)....................2

*Premier Int'l Assocs., LLC v. Hewlett-Packard Co.*,
    Nos. 2:07-CV-395(DF), 2:07-CV-396(DF), 2008 WL 2138158 (E.D. Tex. May 19,
    2008) ...................................................................................................................................2

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
    No. C 07-4413 PJH, 2007 U.S. Dist. LEXIS 78465 (N.D. Cal. Oct. 11, 2007) .......................3

*Research in Motion, Ltd. v. Visto Corp.*,
    545 F. Supp. 2d 1011 (N.D. Cal. 2008) ...............................................................................2

*Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.*,
    436 F. Supp. 2d 252 (D. Mass. 2006) .................................................................................10

*Sorensen v. Black & Decker Corp.*,
    No. 06cv1572 BTM (CAB), 2007 U.S. Dist. LEXIS 66712 (S.D. Cal. Sept. 10, 2007)...........4

*Sorensen v. Digital Networks N. Am., Inc.*,
    No. C 07-05568 JSW, 2008 U.S. Dist. LEXIS 6454 (N.D. Cal. Jan. 16, 2008).......................2

*Tesco Corp. v. Varco I/P, Inc.*,
    No. H-05-2118, 2006 U.S. Dist. LEXIS 82047 (S.D. Tex. Nov. 9, 2006) ...............................3

*Tomco2 Equip. Sys. Co. v. Se. Agri-Systems, Inc.*,
    542 F. Supp. 2d 1303 (N.D. Ga. 2008) .................................................................................2

*Xerox Corp. v. 3Com Corp.*,
    69 F. Supp. 2d 404 (W.D.N.Y. 1999) .................................................................................10

**STATUTES**

35 U.S.C. § 312(a) ..............................................................................................9

35 U.S.C. § 315(c) ..............................................................................................7


**RULES AND OTHER AUTHORITY**

Fed. R. Civ. P. 11 ...............................................................................................9

Fed. R. Civ. P. 26(d)(1) .....................................................................................8

Fed. R. Civ. P. 26(f) ...........................................................................................8

PTO.  Manual of Patent Examining Procedures § 2686.04 ........................5-6

In its opening brief, BondDesk outlined the powerful effect of *inter partes* reexaminations on narrowing issues in subsequent litigation.  Here, the patent-in-suit contains fifteen claims.  If any are amended or cancelled, that will narrow and alter the issues.  Moreover, because *inter partes* reexamination bars relitigation of issues raised before the PTO, the issues would be narrowed even if all claims survived unamended.  Wall does not contest these points.

Instead, Wall's principal argument is a generic claim that *inter partes* reexamination can take years.  Without pointing to specifics, Wall speculates that memories could fade, evidence could be lost, or the defendants could go out of business.  That generic argument, which could be applied to *any* motion to stay pending *inter partes* reexamination, does not constitute a showing of undue prejudice.  Courts have repeatedly held that the delay inherent in the reexamination process does not constitute undue prejudice.  In fact, by routinely granting stays pending *inter partes* reexamination, courts have overwhelmingly rejected such generic claims of delay.

Wall makes generic arguments because it can point to no facts specific to this litigation that weigh against a stay.  If this case does not qualify for a stay pending *inter partes* reexamination, it is difficult to imagine what case would.  This litigation is in its infancy, with no case scheduling order or trial date.  Reexamination is requested as to the sole patent in issue.  As a non-practicing entity, Wall has an adequate remedy at law.  This litigation should be stayed.

## <u>ARGUMENT</u>

## I.     WALL CANNOT POINT TO ANY SPECIFIC UNDUE PREJUDICE.

### A.     A Generic Claim that Reexamination Takes Years Does Not Demonstrate Undue Prejudice.

Wall claims undue prejudice based on the delay inherent in the *inter partes* reexamination process.  (Opp. at 4-6.)  Yet, courts have repeatedly held that "[t]he delay inherent to the [PTO's] reexamination process [of a patent claim] does not constitute, by itself, undue

prejudice." *Photoflex Prods., Inc. v. Circa 3 LLC*, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *5 (N.D. Cal. May 24, 2006); *see also Sorensen v. Digital Networks N. Am., Inc.*, No. C 07-05568 JSW, 2008 U.S. Dist. LEXIS 6454, at *5 (N.D. Cal. Jan. 16, 2008) (same); *Research in Motion, Ltd. v. Visto Corp.*, 545 F. Supp. 2d 1011, 1012 (N.D. Cal. 2008) ("the delay in having [reexamined] claims adjudicated in court, does not, by itself, constitute undue prejudice"); *eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 789 (D. Colo. 2007) ("While Plaintiff argues that the PTO [*inter partes*] reexamination process could last two years — and up to five if Plaintiff were to receive and appeal an unfavorable decision — Plaintiff neglects to articulate *how* such delays would unduly prejudice its position in the instant litigation.").

Indeed, if Wall's generic complaint about the time required for *inter partes* reexamination were sufficient to bar a stay, no case would ever qualify for a stay pending *inter partes* reexamination. Yet, despite Wall's claim that "motions to stay for an *inter partes* reexamination are frequently denied" (Opp. at 7), virtually every court considering a motion to stay pending *inter partes* reexamination has granted that motion. Those courts have implicitly, and often explicitly, rejected the notion that the time required for such reexaminations should automatically preclude a stay.[1] Those few courts that have denied stays pending *inter partes*

---

[1]    *See Equipements de Transformation IMAC v. Anheuser-Busch Cos.*, No. 07-13306, 2008 U.S. Dist. LEXIS 47163, at *16, 17 (E.D. Mich. June 17, 2008) (staying pending *inter partes* reexamination because, although "[t]he plaintiff claims that reexamination proceedings could last three to four years," "the plaintiff has not shown prejudice" and "did not request preliminary injunctive relief"); *Bausch & Lomb, Inc. v. Rexall Sundown, Inc.*, No. 03-CV-6620T, 2008 U.S. Dist. LEXIS 40385, at *9 (W.D.N.Y. May 19, 2008) (staying pending *inter partes* reexamination) ("Nor do I find that the disadvantages of the delay that invariably will be occasioned by the requested stay outweigh the advantages to this litigation that will result from the PTO's ultimate determination."); *Premier Int'l Assocs., LLC v. Hewlett-Packard Co.*, Nos. 2:07-CV-395(DF), 2:07-CV-396(DF), 2008 WL 2138158, at *5 (E.D. Tex. May 19, 2008) (staying pending *inter partes* reexamination); *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 06CV0253, 2008 U.S. Dist. LEXIS 19241 (N.D. Ohio Mar. 12, 2008) (same); *Tomco2 Equip. Sys. Co. v. Se. Agri-Systems, Inc.*, 542 F. Supp. 2d 1303, 1307,

(Continued . . .)

reexamination have done so because either (1) *inter partes* reexamination was not sought on all

of the patents-in-suit and thus would not necessarily simplify the case or (2) a scheduling order

was already in place and there were impending case deadlines.[2]  Neither condition applies here.

Wall argues that this case could go to trial before the *inter partes* procedure is completed.

(Opp. at 5.)  That danger argues in favor of a stay, not against it.  The Federal Circuit has held

that the PTO would not be bound in its reexamination by the determinations of this Court.  *In re*

*Trans Tex. Holdings Corp.*, 498 F.3d 1290, 1298 (Fed. Cir. 2007).  Accordingly, if this litigation

were to go to trial, and BondDesk were found to be infringing a valid patent, the PTO could still

later find the patent invalid.  *See Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951,

---

(. . . continued)
   1312 (N.D. Ga. 2008) (staying pending *inter partes* reexamination because "[t]he Court sees
   no potential prejudice to the parties," despite the potential for "a significant delay of
   plaintiff's case"); *Cima Labs, Inc. v. Actavis Group HF*, Nos. 07-893 (DRD), 06-1970
   (DRD), 2007 U.S. Dist. LEXIS 41516, at *25 (D.N.J. June 7, 2007) (staying pending *inter*
   *partes* reexamination, while acknowledging that "the procedure may not operate as
   expeditiously as some may have expected"); *eSoft*, 505 F. Supp. 2d at 789 (staying pending
   *inter partes* reexamination because the two to five year delay cited by plaintiffs was not
   sufficient to demonstrate undue prejudice); *Procter & Gamble Co. v. Kraft Foods Global,*
   *Inc.*, No. C 07-4413 PJH, 2007 U.S. Dist. LEXIS 78465, at *4 (N.D. Cal. Oct. 11, 2007)
   (granting stay pending *inter partes* reexamination); *Anascape, Ltd. v. Microsoft Corp.*,
   475 F. Supp. 2d 612, 615, 617 (E.D. Tex. 2007) (same); *Tesco Corp. v. Varco I/P, Inc.*, No.
   H-05-2118, 2006 U.S. Dist. LEXIS 82047 (S.D. Tex. Nov. 9, 2006) (same); *Middleton,*
   *Inc. v. Minn. Mining & Mfg. Co.*, No. 4:03-cv-40493, 2004 U.S. Dist. LEXIS 16812 (S.D.
   Iowa Aug. 24, 2004) (same).

[2]   *See Network Appliance, Inc. v. Sun Microsystems, Inc.*, No. C-07-06053 EDL, 2008 WL
   2168917, at *3 (N.D. Cal. May 23, 2008) ("[s]taying the case as to the three patents in
   reexamination [out of sixteen in the suit] is not nearly as likely to significantly simplify this
   litigation as much as did the stays issued in those single patent cases"); *Cooper Techs. Co. v.*
   *Thomas & Betts Corp.*, No. 2:06-CV-242, 2008 WL 906315, at *2 (E.D. Tex. Mar. 31, 2008)
   (denying stay where one patent-in-suit was in *inter partes* reexamination and the other patent
   was in *ex parte* reexamination, because the concurrent use of the *ex parte* reexamination
   procedure on a related patent would allow the requester to avoid the estoppel effect ordinarily
   created by *inter partes* reexamination); *Genoa Color Techs., Ltd. v. Samsung Elecs. Am.,*
   *Inc.*, No. 07 Civ. 6233 (PKC), 2008 WL 754681, at *1 (S.D.N.Y. Mar. 12, 2008) (denying
   stay where reexamination was sought four months after scheduling order setting trial date
   issued, and fact discovery was set to conclude in less than seven months).

952, 38 U.S.Q.P.2d 1377, 1378 (W.D.N.Y.1996). At that point, this Court and the parties would have wasted tremendous resources and defendants might not be able recover the damages that they had wrongfully been forced to pay. *Id.*; *see also Sorensen v. Black & Decker Corp.*, No. 06cv1572 BTM (CAB), 2007 U.S. Dist. LEXIS 66712, at *15 (S.D. Cal. Sept. 10, 2007) (discussing the "prejudice[]" and "irreparable harm" defendant would suffer); *Ho Keung Tse v. Apple, Inc.*, No. C 06-06573 SBA, 2007 U.S. Dist. LEXIS 76521, at *10 (N.D. Cal. Oct. 4, 2007) (describing the "wasted resources . . . if this action goes to trial prior to the re-examination"). Wall's argument reinforces the danger of prejudice absent a stay.[3]

### B.    Wall Can Identify No Specific Undue Prejudice or Clear Tactical Disadvantage that It Will Suffer.

Wall speculates about purported "tactical disadvantage[s]" that it might suffer: that memories could fade, evidence could be lost, or BondDesk could go out of business. (Opp. at 6-7.) Wall has no specific indication that any of those events will occur. Instead, Wall's objection is simply a generic statement about the inherent effects of the passage of time. That is no basis to deny a stay. *See Alltech, Inc. v. Agra-Partners, Ltd.*, No. 3:06-CV-337-R, 2007 U.S. Dist. LEXIS 78977, at *5 (W.D. Ky. Oct. 23, 2007) ("The mere possibility that memories could fade is not enough to outweigh the benefits of staying these proceedings.") (staying pending reexamination). Moreover, BondDesk's witnesses and evidence will be equally affected. *Id.*

---

[3]    Wall incorrectly demands a showing that *BondDesk* will suffer "hardship" absent a stay. (Opp. at 7-8.) That is not the standard. *See, e.g.*, *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052, at *3-4 (D. Del. May 14, 2003) (the test is "whether a stay would unduly prejudice . . . the *non-moving party*" (emphasis added)). The cases cited by Wall refer to changing an agreed-upon trial date on the eve of trial, not moving to stay pending reexamination at a case's inception. *See Cognex Corp. v. Nat'l Instruments Corp.*, No. 00-442-JJF, 2001 WL 34368283, at *1 (D. Del. June 29, 2001); *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076-77 (3d Cir.1983). In any event, BondDesk has shown the hardship of a potential trial before reexamination is completed. (*See also* Br. at 7.)

Wall further objects that a stay will "prevent" it from "enforcing the patent against other infringers." (Opp. at 7.) But "allegedly infringing non-parties" have "nothing to do with the instant proceedings." *Ho Keung Tse*, 2007 U.S. Dist. LEXIS 76521, at *13-14. "Those third parties are not parties to this litigation, nor does [Wall] explain why [it] is unable to pursue [its] claims against them now or how staying this case will deprive [it] of such claims." *Id.* at *14.

In the end, Wall does not contest the key point: it is a patent holding company that does not practice the invention. Damages will serve as an adequate remedy at law if Wall prevails.

### C.     In Any Event, Wall Overstates the Length of Time Affected by the Stay.

Even if a generic claim of delay could establish undue prejudice, Wall overstates the delay. BondDesk has proposed that any party may move to lift the stay after its entry and that, after the PTO concludes its review but before any appeal to the BPAI or Federal Circuit, the parties provide a status update stating their positions about continuing the stay. If new factual developments truly caused specific undue prejudice to Wall, it could seek to lift the stay then.

In any event, Wall's dire warnings about the time for reexamination are overstated. Wall's statistics and examples ignore a key factor: as explained in BondDesk's opening brief, the PTO provides expedited treatment for *inter partes* reexaminations that are in litigation. When the PTO is aware that the patent is in litigation, the reexamination proceeding "will take precedence to *any other action* taken by the examiner" at the PTO. Manual of Patent Examining Procedures § 2686.04 (emphasis added). Where "litigation is stayed for the purpose of reexamination, all aspects of the [reexamination] proceeding will be expedited to the extent possible. Cases will be taken up for action at the earliest time possible, and time periods set in actions may be extended only upon a strong showing of sufficient cause." *Id.* Where such reexamination has been pending more than a year, the PTO may set a one-month "shortened

statutory period for response rather than the two months usually set." *Id.* Wall's statistics, which lump together cases in litigation and those that are not, ignore this distinction. (Opp., at Ex. I.) Similarly, although Wall cites two "examples" of pending reexaminations (Opp., at Exs. F, G), the PTO files for those reexaminations contain no notification of pending litigation, so the PTO could not have provided expedited review there.

Wall's statistics also ignore improvements that the PTO has made to speed up processing of *inter partes* reexaminations. In 2005, the PTO created a new unit with twenty full-time examiners devoted solely to reexaminations. (*See* Ex. A hereto.) Wall's statistics, which are based on all reexaminations requested since 2001, do not distinguish between reexaminations addressed by the new dedicated unit and others predating the creation of that unit.

More fundamentally, Wall ignores that the time required for reexamination increases when reexamination is most valuable: that is, where the examiner has initially rejected the claims and the patentee is offering counter-arguments for allowance or proposing amendments. (*See, e.g.*, Ex. B hereto (long-running reexamination with claims twice amended after multiple rejections).) In those situations, some or possibly all claims are likely to be cancelled or amended, with profound effects on the litigation. When reexamination is taking the longest, that is typically when the need to stay pending reexamination is the greatest.

## II.     THE *INTER PARTES* REEXAMINATION OF THE SOLE PATENT-IN-SUIT WILL NECESSARILY SIMPLIFY THE ISSUES.

Wall contends that, in reexamination, "[a]ll the claims could just as easily be confirmed as cancelled." (Opp. at 9.) Even if some but not all claims are cancelled or amended, a stay will avoid wasting resources on claims that were invalid or have been rewritten. And, even in the unlikely event that all claims survive reexamination, that will streamline the litigation as well. As explained in BondDesk's opening brief, in an *inter partes* reexamination, unlike in an *ex*

*parte* reexamination, a third-party requester is estopped in litigation from asserting invalidity on any ground "which the third-party requester raised or could have raised during the *inter partes* reexamination proceedings." 35 U.S.C. § 315(c). (Br. at 6.) Because of that powerful estoppel effect, many invalidity issues will be conclusively resolved in reexamination. That is why "an *inter partes* reexamination can have no other effect but to streamline ongoing litigation." *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-CV-81 (DF), 2006 U.S. Dist. LEXIS 48431, at *9 (E.D. Tex. July 14, 2006). Wall offers no response to this crucial point.

Moreover, it is statistically unlikely that the patent's claims will survive at all. As noted in BondDesk's opening brief, the latest PTO report showed that 82% of patents in *inter partes* reexamination had all claims canceled, and only 9% survived with all claims allowed. (Br. at 6.) Wall argues that these statistics could be skewed because only eleven reexamination certificates had been issued at the time of the report. (Opp. at 8.) However, the same results apply when examining interim rulings made in pending *inter partes* reexaminations. As of July 1, 2005, the PTO had cancelled *all* claims on which reexamination was requested in 84% of the 76 pending reexaminations, and allowed all claims in only 1% of cases. (Ex. C hereto, at 17.)

Wall's principal response is to attack BondDesk's reexamination request as "weak." (Opp. at 9.) Even if that were true, reexamination would streamline the litigation by conclusively precluding relitigation of those "weak" arguments in this Court. And, in any event, Wall's assertion is misplaced. Wall criticizes BondDesk for filing a 900-page request that uses "thirteen references in eleven different combinations." That speaks to the strength of BondDesk's request, not its weakness. BondDesk's request shows that Claims 1-3, 6, 8, 11, 12, 14, and 15 can be invalidated by *any one* of three independent references. Claims 9, 10, and 13 can be invalidated by *either* the BondExchange Manual alone or *any one* of six combinations.

- 7 -

Claims 4, 5, and 7 can be invalidated by *any one* of the Buist patent alone, the BondExchange

Manual alone, *or* a combination of two other references.[4]

It is true that BondDesk's request is complex in the sense that different references, alone

or in combination, invalidate different claims. But that complexity merely reinforces the value

of having those references conclusively evaluated by expert examiners at the PTO, BPAI, and

Federal Circuit first, rather than wasting the Court's and the parties' resources on a complex,

lengthy claim construction and jury trial that could be mooted by the PTO's conclusions.

## III.    WALL CANNOT DISPUTE THAT THIS CASE IS IN ITS INFANCY.

Wall does not dispute that no discovery has been exchanged, no trial date has been set,

and no initial case management conference has been scheduled. Instead, Wall argues (1) that

BondDesk "refus[ed] to submit to discovery," and (2) that Wall invested resources in its pre-

filing investigation and settlement efforts. (Opp. at 10-11.) Both arguments are inapposite.

BondDesk has no obligation to begin discovery yet. The Federal Rules of Civil

Procedure provide for a stay of discovery until the parties have conferred regarding a discovery

plan. Fed. R. Civ. P. 26(d)(1). The parties' conference is typically held 21 days prior to the

initial case management conference, to ensure that discovery proceeds under a plan overseen by

the Court. Fed. R. Civ. P. 26(f). As no initial case management conference has been scheduled,

BondDesk had no obligation to confer on a discovery plan to be approved at that conference or,

concomitantly, to open discovery. Indeed, it would have been wasteful for BondDesk to open

---

[4]    Wall asserts that two combinations involve art with priority dates after the claimed priority
date of the patent. (Opp. at 9.) As explained in the reexamination request, that is because the
patent is not entitled to its claimed priority date, due to insufficient disclosures. (Br., at Ex. 1
at 10-16.) Wall further complains that the BondExchange Manual was not "published."
(Opp. at 9-10.) In fact, as explained in the reexamination request, the BondExchange Manual
was posted online and widely distributed without restrictions. (Br., at Ex. 1 at 68-71.)

discovery and embroil the Court and the parties in potential discovery disputes that would likely be mooted by the reexamination that BondDesk planned to seek.

As to Wall's argument that it has expended resources in pre-filing investigation and on two settlement meetings, that is irrelevant. As Wall concedes, the test is "whether discovery is complete and a trial date has been set." (Opp. at 3.) Neither has occurred here. Moreover, Wall's pre-filing investigation is part of its duties under Rule 11. Such investigation should have occurred in every case where a stay is sought, and does not argue against a stay. Nor do Wall's settlement efforts indicate that Wall would be prejudiced by a stay. Laying the groundwork for a potential settlement likely will not be wasted effort, as parties frequently renew settlement discussions following reexamination. *See Pegasus*, 2003 U.S. Dist. LEXIS 8052, at \*6 (noting that "the outcome of the reexamination process may encourage a settlement").

## IV.    BONDDESK'S MOTION FOR A STAY IS NOT PREMATURE.

Unable to point to any specific facts showing undue prejudice, to dispute the powerful narrowing effect of *inter partes* reexamination, or to show a trial date has been set or discovery completed, Wall falls back on arguing that BondDesk's motion is premature because the PTO has not yet issued an order stating that it will reexamine. (Opp. at 2-3.) As explained in BondDesk's opening brief, requests for *inter partes* reexamination are granted 96% of the time. (Br. at 8.) Accordingly, courts have repeatedly found that the best course is to issue a stay, with the intention of lifting the stay in the unlikely event that reexamination is denied. (*Id.*) By statute, the PTO's decision must be made by September 3, 2008. 35 U.S.C. § 312(a).

Wall offers no response to these points, other than to cite two cases denying without prejudice motions to stay where the PTO had not yet ordered reexamination. (Opp. at 3 n.8.) Those courts refused to stay, though, because those cases were at an advanced stage, where there

was something to be gained by actively proceeding while awaiting the PTO's ruling.[5]  By

contrast, here, discovery has not yet opened and no case deadlines have been set, so there is no

prejudice to Wall in waiting another two months, at most, for the PTO to rule.

### **CONCLUSION**

All three factors weigh strongly in favor of a stay.  For the foregoing reasons, the Court

should stay the instant litigation pending *inter partes* reexamination of the patent-in-suit.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
  *Attorneys for BondDesk Group, L.L.C.*
  *and BondDesk Trading, L.L.C.*

OF COUNSEL:
Michael A. Jacobs
Rita F. Lin
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000

June 30, 2008
2388970

---

[5]   *See Applied Materials, Inc. v. Negevtech, Inc*., No. C 04-03656 SI, 2005 WL 1656894, at *2
(N.D. Cal. July 14, 2005) (denying stay without prejudice to renewal because the "parties
have engaged in substantial discovery and currently have summary judgment motions
pending"); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 405 (W.D.N.Y. 1999) (denying
stay without prejudice to renewal where reexamination was requested "[d]ays after this
Court's denial of defendants' motion for summary judgment").  It is not clear whether Wall
also intended to cite *Saint-Gobain Performance Plastics Corp. v. Advanced Flexible
Composites, Inc*., 436 F. Supp. 2d 252 (D. Mass. 2006), for this proposition.  In any event,
*Saint-Gobain* did not deny the requested stay as premature, but rather denied the stay for
reasons unrelated to the pendency of the PTO's ruling.  436 F. Supp. 2d at 253.

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Karen E. Keller, Esq.
> YOUNG CONAWAY STARGATT & TAYLOR, LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on June 30, 2008 upon the following individuals in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**

John W. Shaw, Esq.
Karen E. Keller, Esq.
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

**jshaw@ycst.com**
**kkeller@ycst.com**

**BY E-MAIL**

Michael W. Shore, Esq.
Alfonso Garcia Chan, Esq.
SHORE CHAN BRAGALONE LLP
325 North Saint Paul Street
Suite 4450
Dallas, TX  75201

**mshore@shorechan.com**
**achan@shorechan.com**

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)

EXHIBIT A

 **United States Patent and Trademark Office**          **NEWS**

Home| Site Index| Search| FAQ| Glossary| Guides| Contacts| eBusiness| eBiz alerts| News| Help

**Press Releases** > USPTO Improves Process for Reviewing Patents

**PRESS RELEASE**                                        **July 29, 2005**
Contact:                                                 #05-38
Ruth Nyblod
571-272-8400
ruth.nyblod@uspto.gov

### USPTO IMPROVES PROCESS FOR REVIEWING PATENTS

The U.S. Department of Commerce's United States Patent and Trademark Office (USPTO) has implemented new processes for handling reexamination proceedings to improve timeliness and quality. Patent reexamination is a valuable, low-cost alternative to litigation for determining the patentability of the claims in an issued patent. Requests for the USPTO to reexamine a patent can be made as long as written evidence is presented that raises a substantial new question of patentability.

"Timeliness and correctness of decisions in reexamination proceedings are important to providing certainty for all users of the patent system," noted Under Secretary of Commerce for Intellectual Property and Director of the USPTO Jon Dudas. "We have a duty to the American public to get reexaminations right and to conduct them with dispatch so they remain an effective tool."

The USPTO's goal is that reexaminations that have been pending with an examiner more than two years now will be resolved by October 1, 2005. In addition, all future reexamination proceedings will be completed within a specific timeframe, which is expected to be less than two years. In March 2005 there were over 420 reexaminations that had been pending more than two years and that number would have grown to over 600 by the end of September 2005. Today, fewer than 360 cases remain, with nearly half in the final stages. To ensure the quality of these proceedings, all reexamination decisions now require a thorough review by a panel of supervisors and senior patent examiners. Reexaminations where an initial decision has been made will remain with the examiner originally assigned to the reexamination. All other reexaminations will be reassigned to a newly formed central reexamination unit.

Prior to the new initiative, reexamination cases were assigned to examiners according to technology. Under the new initiative, 20 highly skilled primary examiners who have a full understanding of reexamination practice and relevant case law will concentrate solely on reexamination. The 20-examiner unit began operation earlier this week and all new requests for reexamination will be assigned to them. Using skilled examiners assigned to a single unit will enhance the quality and reduce the time of reexaminations by allowing the USPTO to monitor more effectively the reexamination operations.

# # #

Last Modified: 09/06/2007 09:01:08

EXHIBIT B

| 95/000,090 | SCANNING FORCE MICROSCOPE PROBE CANTILEVER WITH REFLECTIVE STRUCTURE | 06-27-2008::12:54:52 |
|---|---|---|

## Transaction History

| Date | Transaction Description |
|---|---|
| 04-14-2008 | Date Forwarded to Examiner |
| 10-04-2007 | Third Party Requester Comments after Non-final Action |
| 10-04-2007 | Certificate of Service |
| 09-06-2007 | Information Disclosure Statement (IDS) Filed |
| 09-06-2007 | Response after non-final action - owner - timely |
| 09-06-2007 | Information Disclosure Statement Filed |
| 09-06-2007 | Certificate of Service |
| 07-26-2007 | Mailing of Petition Decision - Granted |
| 07-17-2007 | Request for Extension of Time |
| 07-17-2007 | Certificate of Service |
| 07-17-2007 | Request for Extension of Time |
| 07-02-2007 | Action Closing Prosecution. |
| 06-28-2007 | Reexam Litigation Search Conducted |
| 04-23-2007 | Miscellaneous Incoming Letter |
| 04-23-2007 | Certificate of Service |
| 01-29-2007 | Case Docketed to Examiner in GAU |
| 10-23-2006 | Case Docketed to Examiner in GAU |
| 08-31-2006 | Ready for Examiner Action after Nonfinal |
| 08-14-2006 | Third Party Requester Comments after Non-final Action |
| 07-17-2006 | Third Party Requester Comments after Non-final Action |
| 07-13-2006 | Response after non-final action - owner - timely |
| 06-30-2006 | Notification of Informal or Nonresponsive Amendment |
| 06-16-2006 | Certificate of Service |
| 06-16-2006 | Informal response/amendment |
| 06-07-2006 | Case Docketed to Examiner in GAU |
| 04-14-2006 | Non-final action mailed |
| 03-22-2006 | Correspondence Address Change |
| 03-22-2006 | Change in Power of Attorney (May Include Associate POA) |
| 03-16-2006 | Ready for Examiner Action after Nonfinal |
| 10-27-2005 | Correspondence Address Change |
| 10-26-2005 | Correspondence Address Change |
| 10-20-2005 | Certificate of Service |
| 10-20-2005 | Correspondence Address Change |
| 10-14-2005 | Response after non-final action - owner - timely |
| 10-11-2005 | Reexam - Information Disclosure Statement Filed by Third Party Requester |
| 10-11-2005 | Third Party Requester Comments after Non-final Action |
| 09-26-2005 | Notification of Informal or Nonresponsive Amendment |
| 09-12-2005 | Information Disclosure Statement Filed |
| 09-12-2005 | Informal response/amendment |
| 07-18-2005 | Non-final action mailed |
| 07-18-2005 | Inter partes Reexamination Ordered |
| 05-19-2005 | Case Docketed to Examiner in GAU |

| | |
|---|---|
| 05-16-2005 | Completion of Preprocessing - Released to Assigned GAU |
| 05-16-2005 | Application Is Now Complete |
| 06-14-2005 | Notice of Reexam Published in Official Gazette |
| 05-16-2005 | Notice of assignment of reexamination request |
| 05-16-2005 | Notice of reexamination request filing date |
| 05-16-2005 | Title Report |
| 05-02-2005 | Receipt of Original Inter Partes Reexam Request |

**Close Window**

036295/US - 477972.0002
PATENT

Listing of Claims

The following listing of claims replaces all prior claim listings:

1. (Twice Amended)         A scanning force microscope probe, comprising:

    a cantilever having a [first] <u>fixed</u> end and a [second] <u>free</u> end;

    <u>a tip disposed on a front side of the cantilever;</u> ~~and~~

    a reflective structure included on <u>a back side of</u> the cantilever <u>and arranged</u> such that at least a portion of light that is directed substantially through free space to the cantilever in a first direction having a <u>first</u> directional component from the [first] <u>fixed</u> end to the [second] <u>free</u> end <u>and at least a second directional component from above a back side of the cantilever to the cantilever</u> is reflected from the reflective structure substantially through free space in a second direction having <u>at least</u> a <u>third</u> directional component from the [second] <u>free</u> end to the [first] <u>fixed</u> end<u>; and</u>

    <u>at least one optical arrangement configured to direct the portion of light to and from the cantilever, wherein the at least one optical arrangement is not located directly above the free end.</u>

2. (Original)         The scanning force microscope probe of claim 1 wherein the first direction is substantially opposite to the second direction.

3. (Canceled)

4. (Original)         The scanning force microscope probe of claim 1 wherein the reflective structure comprises a reflective surface disposed on the back side of the cantilever.

5. (Canceled)

EXHIBIT C

# What's Really Happening in *Inter Partes* Reexamination[1]

*Joseph D. Cohen*[2]

## 1    Introduction

*Inter partes* reexamination has been with us for almost four years.[3]  During that time, we've had many comments on *inter partes* procedures.[4]  Some say that the *inter partes*

---

[1] Copyright ©2004, 2005 Joseph D. Cohen, Stoel Rives LLP.

This paper is based on the article first published in the March 2005 issue of the JOURNAL OF THE PATENT AND TRADEMARK OFFICE SOCIETY, 87 J. PAT. & TRADEMARK OFF. SOC'Y 207 (2005).

[2] Partner in the Patent Law Group of Stoel Rives LLP, Portland, Oregon.  My direct dial number is 503.294.9452, and my email is jdcohen@stoel.com.

[3] This depends on how you count:  from the effective date of the legislation, or from the first *inter partes* proceeding.

The *inter partes* reexamination legislation became effective November 29, 1999.  The procedure is part of the American Inventors Protection Act of 1999, which is part of the Intellectual Property and Communications Omnibus Reform Act of 1999, **Pub. L. No. 106-113, 113 Stat. 1501.**

You can request *inter partes* reexam only for patents issued on applications filed on or after the effective date of the Act.  *See, e.g.,* 37 C.F.R. § 1.913 (2004); MANUAL OF PATENT EXAMINING PROCEDURE (Rev. 2, May 2004) ("MPEP") §§ 2610-2611.  The PTO issued the first such design patent, D422,822 ("Toothbrush holder") April 18, 2000, and the first such utility patent, 6,062,457 ("Stapler") May 16, 2000.

It took another 1 1/2 years before the first *inter partes* reexamination proceeding.  On July 26, 2001, Lance G. Johnson of Roylance, Abrams, Berdo & Goodman, Washington, DC, delivered the first *inter partes* reexam request:  95/000,001.  The PTO assigned the request a July 27, 2001, filing date.  Examiner Rabon Sergent examined the case.

[4] *E.g.,* Kenneth L. Cage & Lawrence T. Cullen, *An Overview of Inter Partes Reexamination Procedures*, 85 J. PAT. & TRADEMARK OFF. SOC'Y 931 (2003); Robert E. Cannuscio, *Optional Inter Partes Reexamination:  A Practitioner's Perspective*, SF84 A.L.I.-A.B.A. 75 (2000); Natalie M. Derzko & John W. Behringer, *Inter Partes Reexamination Starting In 2003 – A Potentially Useful Approach To Challenging Invalid Biotechnology Patents*, 21 NATURE BIOTECH. 823-825 (2003)  Michael L. Goldman & Alice Y. Choi, *The New Optional Inter Partes Reexamination Procedure and Its Strategic Use*, 28 AIPLA Q.J. 307 (2000); Mark D. Janis, *Inter Partes Patent Reexamination*, 10 FORDHAM INTELL. PROP. MEDIA & ENT. L.J. 481 (2000); Lance G. Johnson, *Inter Partes Reexamination:  The USPTO Alternative to Patent Litigation*, SCITECH LAWYER, Fall 2004, at 12; Sherry M. Knowles *et al.*, *Inter Partes Reexamination in the United States*, 86 J. PAT. & TRADEMARK OFF. SOC'Y 611 (2004); Frederick C. Williams, *Giving Inter Partes Patent Reexamination a Chance to Work*, 32 AIPLA

procedures are a recipe for disaster: "It would be legal malpractice to recommend a client initiate an inter partes reexamination."[5] Others maintain that the recipe is superior: "[I]n view of the many advantages of inter partes reexamination, it is not hard to envision it becoming the dominant forum for patent validity disputes . . . ."[6]

Evaluations of *inter partes* reexam have been largely theoretical and based on the recipe itself—the statute and regulations. But the proof of the pudding is in the eating.[7] With the advent of publicly available Image File Wrappers ("IFWs"), we can more readily taste the pudding; we can see what's actually happening in *inter partes* reexam, and how well it matches up with the theory.

## 2    Key Features and Benchmarks of *Inter Partes* Reexamination

I won't review all the reexam statutes, rules, and procedures.[8] But to understand the data I'm presenting, you need a basic understanding of key features and benchmarks of *inter partes* reexamination.

---

Q.J. 265 (2004); David L. Stewart, *Inter Partes Reexam—On Steroids*, 85 J. PAT. & TRADEMARK OFF. SOC'Y 656 (2003); M. Patricia Thayer *et al.*, *Inter Partes Reexamination*, PATENT WORLD May 2001, at 1 (available at http://www.hewm.com/use/articles/interpartes.pdf); Robert T. Pous & Charles L. Gholz, *Will Inter Partes Reexamination Be Embraced by Third Parties as an Alternative to Litigation?*, INTELLECTUAL PROPERTY TODAY, vol. 7, no. 3, March 2000, at 37; Frank A. DeLucia, Jr., *Recent Developments in Inter Partes Reexamination Practice*, http://www.fitzpatrickcella.com/images/pub_attachment/attachment177.pdf; Richard L. Kaiser, *Inter Partes Reexamination as an Offensive Strategy for Invalidating Patents*, http://www.mbf-law.com/pubs/articles/1121.cfm; V. Bryan Medlock, Jr. & Russell Cass, *Inter Partes Reexamination*, in 2000 Intellectual Property Owners Association Annual Meeting Speakers Materials (2000); *see also, e.g.,* 4 Donald S. Chisum, CHISUM ON PATENTS § 11.07[4][g] (2004); Stephen G. Kunin & Anton W. Fetting, *The Metamorphosis of Inter Partes Reexamination*, 19 BERKELEY TECH. L.J. 971 (2004); Paul Morgan & Bruce Stoner, *Reexamination vs. Litigation—Making Intelligent Decisions in Challenging Patent Validity*, 86 J. PAT. & TRADEMARK OFF. SOC'Y 441 (2004); Qin Shi, *Reexamination, Opposition, or Litigation? Legislative Efforts to Create a Post-Grant Patent Quality Control System*, 31 AIPLA Q.J. 433 (2003).

[5] Knowles *et al.*, *supra* note 4, at 614, 627; *see* Kunin & Fetting, *supra* note 4, at 978; Stewart, *supra* note 4, at 656.

[6] Goldman & Choi, *supra* note 4, at 333.

[7] Miguel de Cervantes Saavedra, DON QUIXOTE pt. ii, ch. xxiv, *quoted in* John Bartlett, FAMILIAR QUOTATIONS (10th ed. 1919).

[8] For the statute, rules, or procedures, go to the source: 35 U.S.C. §§ 311-18 (2002); 37 C.F.R. §§ 1.902-.997 (2004); MPEP chapter 26. For a summary, check the articles listed in note 4 above.

### 2.1    Key Features

#### 2.1.1    Continuing Requester Participation

The identifying feature of *inter partes* reexamination is that it involves not merely the patent owner and the PTO.  In contrast to *ex parte* reexam, a third-party requester participates throughout an *inter partes* case:  the requester initiates the proceeding, the patent owner may respond to any office action, and the requester may comment on any response by the owner.[9]  In *ex parte* reexam, a non-owner *ex parte* requester's participation ends before the first office action.

#### 2.1.2    Statutory Estoppel

Another key feature of the current *inter partes* procedure is estoppel.  If the PTO orders reexam and finally determines that a claim is valid, you can't defend an infringement suit on that claim on grounds that you could have raised in the reexam.[10]  Likewise, if there's a final decision against you (a) in civil litigation that you didn't sustained your burden of proof on invalidity, or (b) in *inter partes* reexamination that a claim is valid, you can't request *inter partes* reexam based on issues you could have raised in the earlier proceeding.[11]  I mention estoppel only because the estoppel created in *inter partes* reexam may be the greatest deterrent to filing *inter partes* requests.[12]  I have no data about estoppel.

### 2.2    Key Benchmarks

This article considers four benchmarks:  Reexamination Order; First Action on the Merits; Right of Appeal Notice; Reexamination Certificate.

---

[9] 35 U.S.C. § 314(b)(2).

[10] *See* 35 U.S.C. § 315(c).

[11] *See* 35 U.S.C. § 317(b).

[12] *See, e.g.,* Goldman & Choi, *supra* note 4, at 326-29; *see also, e.g.,* USPTO, *Round Table Meeting:  The Equities of Inter Partes Reexamination Proceedings* (Feb. 17, 2004), http://www.uspto.gov/web/offices/pac/dapp/opla/comments/reexamproceed/round_tbl_transcript.pdf (last visited Nov. 30, 2004) ("*Inter Partes Round Table*"), at 13 ("[B]ecause of the estoppel that arises should the third-party requester lose, inter partes reexamination always puts the requester at a significant legal disadvantage.") (remarks of Michele Cimbala, Sterne, Kessler, Goldstein & Fox); *id.* at 15-19 (remarks of Collin Webb, chair, ABA Subcommittee for Patent Reexamination and Opposition).

### 2.2.1   Reexamination Order

Based on the request,[13] an examiner decides whether to order reexamination and enters an appropriate order.[14]  The test is whether the request (with any additional patents and publications found by the examiner) raises "a substantial new question of patentability."[15]

### 2.2.2   First Action on the Merits

The second significant benchmark is the first office action on the merits.  Normally, the PTO issues a nonfinal decision on the validity of every claim of the patent.[16]

### 2.2.3   Right of Appeal Notice

The case proceeds iteratively with owner comments and amendments, requester comments,[17] and subsequent office actions until the examiner decides to issue the *inter partes* equivalent of a final action:  an Action Closing Prosecution.[18]  The owner has one more chance to comment and amend (and if the owner does so, the requester may comment).[19]  After considering owner and requester comments on the Action Closing Prosecution, the examiner

---

[13] The examiner may also perform a search and consider patents and publications that were not part of the request.  MPEP § 2644.  This is supported by the statute, 35 U.S.C. § 312(a) ("[T]he Director shall determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, *with or without consideration of other patents or printed publications*." (emphasis added)), but seemingly contradicted by the regulations.  *See* 37 C.F.R. § 1.923 ("[T]he examiner will consider the request and determine whether or not a substantial new question of patentability affecting any claim of the patent *is raised by the request and the prior art citation*." (emphasis added)).

[14] *See* 35 U.S.C. § 312(a).  The examiner normally uses form PTOL-2063, "Order Granting/Denying Request for *Inter Partes* Reexamination."  *See* MPEP § 2646.

[15] 35 U.S.C. § 312(a).

[16] Even if the request asks for reexamination of a limited number of claims, the PTO reexamines every live claim.  MPEP § 2658(IV)(B).

[17] *See* 35 U.S.C. § 314(b); 37 C.F.R. §§ 1.945, 1.947.

[18] *See* 37 C.F.R. § 1.949.

[19] *See* 37 C.F.R. § 1.951.

normally issues a Right of Appeal Notice.[20]  This notice triggers the deadline to appeal to the Board of Patent Appeals and Interferences ("BPAI").[21]

### 2.2.4    Reexamination Certificate

At the end of the case—including any appeals—the PTO issues a Reexamination Certificate.[22]  Obviously, there are proceedings between the Right of Appeal Notice (if any) and the Reexamination Certificate.  But I won't discuss those proceedings, because there simply aren't enough appeals.

## 3    Theoretical Advantages

*Inter partes* reexamination has theoretical and/or perceived advantages (and disadvantages) for the requester.  Only a third party —and not the owner—may file an *inter partes* request.[23]  Because only the third-party requester can act on these advantages, I'll discuss them only from the requester's viewpoint.

### 3.1    Speed

One theoretical advantage is speed.  The statute requires the PTO to enter a Reexamination Order within three months after the request.[24]  This isn't an advantage over *ex parte* reexamination, which has the same statutory deadline.[25]  And, by itself, the speed of the reexamination order offers little advantage over litigation; the test for ordering reexamination— "a substantial new question of patentability"[26]—is so broad; a reexamination order by itself has little substantive import.[27]

---

[20] *See* 37 C.F.R. § 1.953(a).  The examiner may instead choose to reopen prosecution. *See id.*

[21] *See* 37 C.F.R. § 1.953(c).

[22] *See* 35 U.S.C. § 316; 37 C.F.R. § 1.997.

[23] *See* 35 U.S.C. § 311(a) ("Any *third-party requester* at any time may file a request for inter partes reexamination . . . ." (emphasis added)).

[24] *See* 35 U.S.C. § 312(a); 37 C.F.R. § 1.923.

[25] *See* 35 U.S.C. § 303(a).

[26] 35 U.S.C. § 312(a).  The test for *ex parte* reexamination is identical.  *Compare id. with* 35 U.S.C. § 303(a); *see also* MPEP § 2642(I).

[27] *See* MPEP § 2642; *see also, e.g., Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) ("We take notice that the grant by the examiner of a request for reexamination is not probative of unpatentability.  The grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met (*i.e.*, that a

The statute allows the PTO to take an initial action on the merits—the second benchmark—with the reexamination order.[28] (This contrasts with *ex parte* reexamination, where the owner may file a statement—and the requester may reply to the owner's statement—after the reexamination order and before the initial action on the merits.[29]) The *inter partes* regulations go further; they say that an action on the merits will "usually" accompany a reexam order.[30]

The statute also says that *inter partes* reexamination—like *ex parte* reexamination—must be conducted with "special dispatch."[31] Some people cite this as an advantage of *inter partes* reexam.[32] Neither the statute nor regulations define "special dispatch."[33] One notable feature of

---

'substantial new question of patentability' has been raised, 35 U.S.C. § 303), does not establish a likelihood of patent invalidity.").

[28] 35 U.S.C. § 313.

[29] *See* 35 U.S.C. § 304; 37 C.F.R. §§ 1.525-.535 (2004); *see also* 37 C.F.R. § 1.939(b) ("Unless otherwise authorized, no paper shall be filed prior to the initial Office action on the merits of the *inter partes* reexamination.").

[30] *See* 37 C.F.R. § 1.935 ("The order for *inter partes* reexamination will usually be accompanied by the initial Office action on the merits of the reexamination.").

[31] *See* 35 U.S.C. § 314(c) (*inter partes*); 35 U.S.C. § 305 (*ex parte*).

[32] *See, e.g.,* Johnson, *supra* note 4, at 13:

**Fast.**  The entire reexamination process is expedited and treated with "Special Dispatch":  two months for the examiner to decide whether to proceed (one month if in litigation), two months for the Patentee to respond, and 30 days for Requester rebuttal comments.  There are no extensions of time other than for "sufficient cause" and these are by no means automatically granted.

[33] *But cf. Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988):

"Special dispatch" is not defined in the statute. . . . According to *Webster's New World Dictionary*, special means distinctive, unique, exceptional, or extraordinary, and dispatch means to finish quickly or promptly. Consequently, the ordinary, contemporary, and common meaning of special dispatch envisions some type of unique, extraordinary, or accelerated movement. In fact, the PTO itself has interpreted special dispatch to require that "reexamination proceedings will be 'special' throughout their pendency" in the office, and provides for an accelerated schedule.  MPEP § 2261.  Whatever else special dispatch means, it does not admit of an indefinite suspension of reexamination proceedings pending conclusion of litigation.

"special dispatch" is limits on extensions for the parties:  the owner may get a time extension only for good cause shown,[34] and the requester cannot get an extension.[35]

### 3.2    Cost

Another cited advantage of *inter partes* reexamination over litigation is cost.  One estimate is "less than $50,000 before experts in the technology and the law" and "3-10 percent of what a judicial proceeding costs."[36]

### 3.3    Greater Likelihood of Favorable Result for Requester

The most important advantage of *inter partes* reexam would be a better outcome than in other proceedings.  I haven't found an author who explicitly says that you're more likely to get better results in *inter partes* reexam.  But this is implicit in articles that recommend the procedure.[37]

## 4    What's Actually Happening?

The PTO recently made IFWs available on the Internet.[38]  Although publicly available IFWs are far from perfect,[39] they are a relatively easy way to see the details of *inter partes*

---

[34] 37 C.F.R. § 1.956.

[35] The requester's deadlines are fixed by statute.  35 U.S.C. § 314(b)(3); *see* MPEP § 2647.01 ("Extensions of time are not available for third party requester comments, because a comment period of 30 days from service of patent owner's response is set by statute.").

[36] Johnson, *supra* note 4, at 14.

[37] *E.g.,* Goldman & Choi, *supra* note 4, at 323-24 ("By removing the participation hurdle, inter partes reexamination is not merely a proceeding that is neutral to the parties, but rather it may decidedly benefit the patent challenger.").

[38] IFWs became available via Public PAIR around August 1, 2004.  *See, e.g.,* USPTO Press Release No. 04-13, "Internet Access to Patent Application Files Now Available" (Aug. 2, 2004), http://www.uspto.gov/web/offices/com/speeches/04-13.htm.

[39] The IFWs suffer from a host of problems including:  documents not yet scanned, missing documents, double scanning, and incorrect indexing.  *See also Inter Partes Round Table*, *supra* note 12, at 55 ("[A]s they get scanned in, the lowest GS-minus whatever level is scanning them in, and the papers get lost and skewed and filed.  We can check on the [PAIR] sites and find cases which are every which way but loose with half the papers filed in the last year not there, and no response in over a year on some of the most important reexams that we've seen.") (remarks of Harold C. Wegner, Foley & Lardner).

For a longer review of some problems with IFWs, see the article in the November 2004 newsletter of the PTO professional employees' union, "POPA Proposes Much-Needed IFW

reexams.[40]  The data in this article are based on my review of IFWs available in Public PAIR through July 1, 2005.

I have been reviewing all available IFWs for *inter partes* cases.  I generally look at each filing in the Public PAIR IFW[41] and at the original patent claims.  I note (among other things): the claims for which reexam was requested, how long it took to issue the reexam order, whether the PTO issued an action on the merits with the reexam order, how the examiner ruled on the claims, and how far the case progressed.  I also reviewed the PAIR "Transaction History."  If there is a concurrent PTO proceeding (such as an *ex parte* request), I look at any available IFW for the concurrent proceeding.  If there is concurrent litigation, I at least look at the electronic docket for that litigation.

Here's what I have found, based on the 100 *inter partes* requests filed so far:

## 4.1    Speed

*Inter partes* reexamination generally moves quickly to the earliest benchmarks—the Reexamination Order and the First Office Action.  But later activity can be relatively slow.

### 4.1.1    Reexamination Order

So far, the PTO has been timely in meeting the three-month statutory deadline for the Reexamination Order.[42]  Of the 100 requests filed so far, 85 are older than three months.  In 2 cases, the PTO vacated the proceeding for procedural reasons before deciding whether to allow reexamination.[43]  In the remaining 83, the PTO entered a Reexamination Order in a timely fashion.  It typically takes about 80 days from request to the Reexamination Order.

---

Changes," POPA Newsletter, Nov. 2004, Vol. 4, No. 7, *available at* http://www.popa.org/newsletters/nov04.shtml.

[40] Before the PTO made IFWs publicly available, you could track the details of PTO proceedings only by ordering the file wrappers from the PTO or another source.  You also could easily track the *contents* of a wrapper via the PAIR "Transaction History".  *See, e.g.,* Johnson, *supra* note 4, at 13 (listing status of 20 reexams).  But the contents often reveal next to nothing.  For instance, the fact that there's an office action doesn't reveal whether the claims were rejected or confirmed.  *See id.*

[41] Some papers in the IFW are not available via Public PAIR.

[42] There's one possible exception.  The request in 95/000,067 was filed December 20, 2004, making the Reexamination Order due March 20, 2005 – a Sunday.  The Public PAIR Transition History page shows the Order mailing date as Monday, March 21.  But the Order itself, as well as the Public PAIR Image File Wrapper Page, show the mailing date as Tuesday, March 22.  The MPEP says that when the 3-month period ends on a weekend or holiday, the order "must be mailed by the *preceding* business day."  MPEP § 2641 (emphasis in original).

[43] In 95/000,011, the request was incomplete.  In 95/000,019, the requester was estopped.

| time to reexam order | days |
|---|---|
| mean | 76 |
| median | 79 |
| maximum | 92 |
| minimum | 43 |

### 4.1.2   First Action on the Merits

The PTO has made good on its intent that an action on the merits "usually" accompany the Reexamination Order.  Indeed, of the 86 orders granting reexamination, 67 have been accompanied by an Action on the Merits.  In the remaining 19 cases, the Action on the Merits followed soon after the Reexamination Order, or there's usually an obvious (and good) reason why there was no simultaneous Action on the Merits.[44]

Getting a ruling on the merits – even an interim one – within three months is an advantage of *inter partes* reexam.  In contrast, after an *ex parte* reexam order the PTO must wait for (1) any owner's statement on the reexam order, and (2) any response to such a statement from the third-party requester.  Only then does the examiner rule on patentability.

The first *inter partes* office action does not merely give a ruling; it gives a reasoned response to each of the requester's invalidity arguments, and a reason for any new grounds of rejection.[45]  So far, the Office Actions on the merits have been long, thorough documents – much

---

[44] Here are some examples:

In 95/000,005, when the PTO ordered *inter partes* reexamination, there was a pending *ex parte* request (filed by a different third-party requester) awaiting an owner's statement and requester's response.

In 95/000,020, there is a pending Director-ordered *ex parte* reexamination.  The PTO decided to merge the proceedings.  Furthermore, the patent in reexamination has 665 claims.

In 95/000,025, a reissue application was pending when reexamination was ordered.  Instead of wasting time ruling on the merits of the original patent, the PTO ordered the reexam to proceed on the basis of the reissued claims.

In 95/000,031, the PTO said that the originally filed request papers lacked a detailed explanation why some of the claims were invalid.  The requester filed additional papers, and the PTO entered an action on the merits less than two months after the reexam order.

In 95/000,053, when the PTO ordered *inter partes* reexamination, there was a pending *ex parte* request (filed by the owner) awaiting an owner's statement and requester's response.

[45] *See* MPEP § 2660(III).

longer than the samples in the MPEP.[46]  You're unlikely to convince the examiner to change his mind about these decisions.

No patent owner has yet succeeded in changing an examiner's mind about a rejection.[47]  Thus, in all the other *inter partes* with a second office action, the examiner has not had a change of heart from the position taken in the first action.  Thus the first action on the merits is a guide to the viability of the original claims.  It therefore also is a speedy and excellent predictor whether the requester will have mandatory intervening rights.

### 4.1.3    Later Benchmarks

In the 86 cases in which it ordered *inter partes* reexamination, the PTO has issued only 17 Actions Closing Prosecution which were not withdrawn and 3 Right of Appeal Notices.  The parties have appealed only 2 case to the BPAI, which hasn't ruled on either appeal.  The PTO has issued only 2 Reexamination Certificates; in those cases there was no appeal to the BPAI.  No case has made it as far as the Federal Circuit.

From this data, it's apparent that *inter partes* cases move more slowly after the initial office action, and that it may take years for the examiner to issue a final order.[48]  The time to a final order is longer than in *ex parte* reexamination.[49]  Indeed, in the time that the PTO (*i.e.,* both the examiner and BPAI) takes to reach a result on an *inter partes* reexamination, some courts could reach a judgment on the merits.[50]

### 4.2    Cost

The IFWs say nothing explicit about costs.  *Inter partes* reexam is doubtless less expensive than litigation.  One author says:

---

[46] *See* MPEP § 2660(IV).

[47] In 95/000,003, the examiner changed her mind in favor of the requester.  The initial Office Action confirmed 23 claims.  But a later Office Action rejected all live claims, including all the ones previously confirmed.  This is the only examiner change of position I've noticed.

[48] USPTO Director Jon Dudas recently laid out a plan for speeding up both *ex parte* and *inter partes* reexamination.  This plan includes establishing "firm processing time periods for all reexamination proceedings ordered (after the Office order for reexamination) on or after October 1, 2005, for both *ex parte* and *inter partes* reexamination proceedings."  Statement Of Jon W. Dudas Before The Subcommittee On Intellectual Property Committee On The Judiciary United States Senate, at 7 (Apr. 21, 2005) (available as http://www.uspto.gov/web/offices/com/speeches/2005apr21.pdf; last visited June 14, 2005).

[49] The average pendency of *ex parte* reexams (filing date to reexamination certificate) is 21.6 months and the median is 16.9 months.  USPTO, "*Ex Parte* Reexamination Filing Data – March 31, 2005" ¶ 7.

[50] Of course, there won't be an appeal in every appealable reexam.

*Inter partes* reexamination through the USPTO can address the issue of patentability, including the enhanced filing fee, for less than $50,000 before experts in the technology and the law. The 2001 AIPLA survey notes a median cost of patent infringement litigation in Texas to be $500,000 (less than $1 million at risk) and $1.5 million ($1-$25 million at risk). *Inter partes* reexamination costs 3-10 percent of what a judicial proceeding costs.[51]

Because that author prosecuted an *inter partes* reexamination to completion,[52] his comments are a good starting point for a cost estimate. In that reexam, the Request for Reexamination was only five pages long and included neither claim charts nor expert declarations. The patent owner disclaimed half of the patent before the reexamination order was entered.[53] The owner also abandoned its efforts after the second office action[54] (and, obviously, there was no appeal to the BPAI). So if the $50,000 estimate is based on the fees in this reexam, consider increasing the upper end of an estimate to account for a longer, more involved proceeding; a less compromising opponent; a more complex patent; a more important patent;

---

[51] Johnson, *supra* note 4, at 14.

[52] 95/000,001.

[53] The patent had 39 claims. The owner disclaimed 17 of them after the request was filed but before the PTO ordered reexamination.

[54] The second office action rejected amended claims filed by the owner. The owner didn't respond.

etc.[55] For instance, another lawyer suggests that at least $150,000 to $200,000 is a reasonable cost for a major reexam of a "company-buster" patent.[56]

Consider, for instance, the *inter partes* request in 95/000,053. This request is 79 pages long and cites 121 prior art references. The requester is a defendant in infringement litigation and also filed two other *inter partes* requests of similar complexity for two related patents.[57] And there are pending *ex parte* reexaminations filed by the owner.[58]

### 4.3    Results

There are at least preliminary results on validity in at least 83 *inter partes* cases. We can review those actual results. We can also compare them to historical *ex parte* data to get some feeling for which procedure works better for the requester.[59]

---

[55] Also note that a different (and probably earlier) version of Mr. Johnson's article uses slightly different language to discuss costs. *See* Lance G. Johnson, *United States: Inter Partes Reexamination: The USPTO Alternative to Patent Litigation* (Sept. 30, 2003), *at* http://www.mondaq.com/article.asp?article_id=22747 (last accessed Nov. 30, 2004); *see also* Lance G. Johnson, *Reexamination as a Limited Alternative to Litigation*, IP LITIGATOR Jan./Feb. 2005 at 19, for the latest version of this article.

Here is a marked-up comparison showing the differences between the first and second versions of this article:

*Inter partes* reexamination through the USPTO can address the issue of patentability, including the enhanced filing fee, [should cost no more than] for less than $50,000 before experts in technology and the law. The 2001 AIPLA survey notes a median cost of patent infringement litigation in Texas to be [between $502,000] $500,000 (less than $1 million at risk) and [$3.495 million (more than $25 million at risk)] $1.5 million ($1-$25 million at risk). *Inter partes* reexamination costs [much less than a judicial proceeding] 3-10 percent of what a judicial proceeding costs.

[56] *Inter Partes Round Table*, *supra* note 12, at 95 ("[W]e did a major ex parte reexamination for a client a couple of years ago, and this brings me to comment on how authoritative your prior art search would have to be. When an opposing patent is potentially a company buster, you have to go all out, and $150,000 to $200,000 of expense for an ex parte or inter partes reexamination is—it makes people wince, but it's not a company buster.") (remarks of Frederick C. Williams, Burns & Levinson).

[57] 95/000,057 and 95/000,058.

[58] 90/007,169, 90/007,170, and 90/007,171.

[59] There are weaknesses in these comparisons, including: the *inter partes* data is interim, whereas the *ex parte* data is final; the *ex parte* data is older than the *inter partes* data; the number of *inter partes* cases is orders of magnitude smaller than the number of *ex parte* cases; a

How many requests are denied?  From the start of *ex parte* reexam through March 2005, the PTO denied 9% of *ex parte* requests.[60]  In recent years the denial rate has been lower.  More recently, the PTO rejected about 4% of *ex parte* requests.[61]  The reason for rejection typically is lack of a substantial question of patentability.

So far, the *inter partes* Reexamination Orders have found a substantial new question of patentability and ordered reexamination in all but 2 cases.[62]  In those cases, the examiner did not compare the patent to the references.[63]  The numbers look like this:

| | | |
|---|---|---|
| Total Reexam Orders | 88 | 100% |
| Orders Granting Reexam | 86 | 98% |
| Orders Denying Reexam | 2 | 2% |

What happens on the merits?  In *inter partes* proceedings in which there's been an action on the merits, the PTO has allowed all the claims in 1 case – 2% of the cases in which it has issued an office action.  The PTO has so far rejected all claims in 71% of the cases in which there's been an office action.  In the remaining 29% of *inter partes* cases, there have been some claim changes–either new or amended claims.  This table shows this data and compares it to *ex parte* data:[64]

| | *inter partes* (interim) | *ex parte* (certificate) |
|---|---|---|
| all claims confirmed | 1% | 26% |
| all claims rejected / cancelled | 71% | 10% |
| some claim changes | 28% | 64% |

substantial number of *ex parte* requests are filed by owners; and each case is different, so comparing numbers may not be valid.

[60] *See,* USPTO, "*Ex Parte* Reexamination Filing Data – March 31, 2005" ¶ 5.b; *see also, e.g.,* FY 1999 USPTO Annual Report ("Century of American Innovation"), Table 13;

[61] *See* USPTO, 2003 Performance and Accountability Report 119 Table 13A (about 4% of *ex parte* requests denied).  This data covers FY1999 to FY2003.  In earlier years, the PTO denied 5-10% of *ex parte* requests.

[62] The PTO also vacated two *inter partes* requests for procedural reasons.  *See* note 43 above.

[63] The cases denying reexam were companion cases, 95/000,082 and 95/000,08.  The same requester asked for reexamination of two closely related patents of the same inventor.  The same examiner ruled that the requester's references were not prior art.

[64] The *inter partes* data is from the 76 cases with an action on the merits.  The *ex parte* data is for issued reexamination certificates and is from USPTO, "*Ex Parte* Reexamination Filing Data – March 31, 2005" ¶ 8.

Based on the first two rows, *inter partes* reexamination is, in fact, much more favorable to the third-party requester.

The information in the last row is almost useless. When the Reexamination Certificate includes some claims, the critical questions are whether (1) the issued claims cover the requester's product(s), and (2) the requester acquired intervening rights.[65] This depends on *which* claims issue. If the PTO confirms any claim (including a new or amended claim) that covers the requester's product, the requester's future path may be cut off. On the other hand, if the PTO cancels all *original* claims covering the requester's product, the requester will avoid back damages.

There's no easy way to compare all confirmed claims to the requester's product(s). Indeed, the IFW rarely reveals the requester's products. But we can make an educated guess about intervening rights: if the PTO rejects all the claims for which reexam was requested, then the requester will get intervening rights. The next table shows what is happening to the claims for which *inter partes* reexam was requested ("requested claims"). Unfortunately, nobody has yet compiled similar data for *ex parte* cases:

|  | *inter partes* (interim) |
| --- | --- |
| some requested claims confirmed | 16% |
| all requested claims rejected | 84% |

So *inter partes* requesters likely have gained at least intervening rights at least 84% of the time. It's hard to tell anything about most of the remaining cases—the requester may have asked for reexam of more claims than needed to obtain intervening rights.[66]

## 4.4    Popularity

I've seen contrasting statements about the actual or projected popularity of *inter partes* reexam—for instance, on the one hand that it will be "dominant"[67] or, on the other that it's hundreds of times less popular than *ex parte* reexamination.[68] At this moment, the truth is in between.

---

[65] Also in some cases, the requester could theoretically convince a court to grant equitable intervening rights. *See* 35 U.S.C. §§ 307(b), 252 (1999).

[66] But we can certainly say that the requester is striking out in the one case in which all claims were confirmed, 95/000,009. This is one of the cases now before the BPAI.

[67] Goldman & Choi, *supra* note 4, at 333 ("[I]n view of the many advantages of inter partes reexamination, it is not hard to envision it becoming the dominant forum for patent validity disputes . . . .").

[68] *See* Knowles *et al.*, *supra* note 4, at 614 ("In the years following its inception, less than forty only three [*sic*] requests for *inter partes* reexaminations were have been filed, as compared to hundreds of requests for *ex parte* reexaminations received each year.").

Only 100 *inter partes* requests have been filed in the four years from the first request. So *inter partes* reexam isn't dominant.

*Ex parte* requests do outnumber *inter partes* requests by one to two orders of magnitude (something like 15:1). But don't make the mistake of concluding that third parties choose *ex parte* reexam by a similar ratio. *Inter partes* reexam is not an option for most requesters: (1) many *ex parte* requesters are patent owners[69] (*inter partes* reexam is not an option for owners), and (2) so far, the vast majority of patents in *ex parte* requests issued from applications filed before November 29, 1999, so *inter partes* reexam is not an option for those requesters.[70]

It would be more useful to know how often requesters pick *inter partes* reexamination when they actually have a choice. To get a handle on this, I looked at the *ex parte* requests in the Electronic Official Gazettes from July 6 through November 30, 2004. These Gazettes covered requests filed May 21 through October 21, 2004. I identified and counted the requests that were eligible to be filed *inter partes*—*i.e.,* the requests filed by third parties on patents that issued from applications filed on or after November 29, 1999. Here's what I found, and how it compares to *inter partes* requests filed in the same period:

| May 21 – Oct. 21, 2004 | *ex parte* | *inter partes* | total |
|---|---|---|---|
| requests filed | 210 | 14 | 224 |
| % of requests filed | 94% | 6% | 100% |
| *inter partes* eligible requests filed | 33 | 14 | 47 |
| % of *inter partes* eligible requests | 70% | 30% | 100% |

So if this data is a fair sample, requesters who have a choice currently choose *ex parte* over *inter partes* reexam by a ratio of 2.3:1. *Ex parte* is still the procedure of choice, but not by an order of magnitude. Also, the pace of *inter partes* requests is gradually increasing, as shown by this table:

---

[69] From the inception of reexam through FY2003, patent owners filed 43% of *ex parte* requests. *See* USPTO, "Reexamination Filing Data—September 30, 1995" at 1, ¶ 1 (data from inception through FY1995); USPTO, 1998 Annual Report, Table 13 (FY1996-FY1998); USPTO, 2003 PERFORMANCE AND ACCOUNTABILITY REPORT, 119, Table 13A (1999-2003).

[70] *See Inter Partes Round Table*, *supra* note 12, at 92-93 ("I did a really back-of-the-envelope calculation of how many patents are subject to inter partes reexamination in comparison to how many patents are actually in force at the current time, with some very gross assumptions, and I came out with a figure like 6.25 percent. This leads to a ratio of patents available for [*inter partes*] reexamination to patents in force of something like a factor of 16. If you look at the numbers cited in the notes that were handed out to us, the ratio between ex parte reexamination requests during the time period cited and inter partes reexamination requests during the same time period is approximately 9 or 10 to one.") (remarks of Frederick C. Williams, Burns & Levinson).

| period | new *inter partes* requests |
|--------|------------------------------|
| 07/01/01-06/30/02 | 4 |
| 07/01/02-06/30/03 | 18 |
| 07/01/03-06/30/04 | 26 |
| 07/01/04-06/30/05 | 52 |

## 5      Conclusions

Review of the records in *inter partes* reexaminations shows that within three months, the PTO will actually rule on the reexamination request and – in almost all cases – issue an action on the merits.  After the first office action, no patent owner has yet convinced an examiner to change his mind about how prior art applies to the original claims.  After the first office action, the case likely will proceed more slowly than an *ex parte* reexam, and possibly as slow as infringement litigation in faster districts.  Thus *inter partes* reexam is best suited (compared to litigation and to *ex parte* reexam) to requesters who need a fast interim result and are willing to live with lack of finality for years.

So far, requesters have achieved good results in *inter partes* reexamination.  Even given the difficulty of comparing interim *inter partes* results to old, final *ex parte* data, third-party requesters are doing significantly better in *inter partes* cases than in *ex parte* cases.  *Inter partes* requesters likely will gain mandatory intervening rights in about three-quarters of the cases.  Thus third parties who decide to seek reexamination are significantly more likely to do better by filing *inter partes* as opposed to *ex parte*.

## 6      Data

Based on IFWs available through PAIR as of July 1, 2005.

| | | | |
|---|---|---|---|
| Filed *inter partes* requests | 100 | | |
| Number of requests at least 3 months old | 85 | | |
| Number of proceedings vacated prior to reexam order | 2 | 2% | of requests |
| Number of requests at least 3 months old, not vacated | 83 | | |
| Reexamination Orders | 88 | | |
| Reexam Orders within 3 months of filing date | 88 | | |
| Mean days to Reexamination Order | 76 | | |
| Median days to Reexamination Order | 79 | | |
| Minimum days to Reexamination Order | 43 | | |
| Maximum days to Reexamination Order | 92 | | |
| Orders Denying Reexamination | 2 | 2% | of  reexam orders |
| Orders Granting Reexamination | 86 | 98% | of reexam orders |
| Reexam Orders accompanied by action on the merits | 67 | 78% | of orders granting reexam |
| Reexam Orders *not* accompanied by action on merits | 19 | 12% | of orders granting reexam |
| Cases with at least one action on merits | 76 | | |
| Cases with Action Closing Prosecution | 17 | | |
| Right of Appeal Notices | 3 | | |

| | | | |
|---|---|---|---|
| Appeals to BPAI | 2 | | |
| BPAI decisions | 0 | | |
| Appeals to Federal Circuit | 0 | | |
| Reexamination Certificates | 2 | | |
| Cases rejecting (so far) all claims | 54 | 71% | of cases with actions |
| Cases rejecting (so far) all original claims | 55 | 72% | of cases with actions |
| Cases rejecting (so far) all claims for which reexam was requested | 64 | 84% | of cases with actions |
| Cases allowing (so far) at least some claims for which reexam was requested | 12 | 16% | of cases with actions |
| Cases allowing (so far) some claims | 21 | 28% | of cases with actions |
| Cases allowing (so far) all claims | 1 | 1% | of cases with actions |
| Cases allowing (so far) some or all claims | 22 | 29% | of cases with actions |